IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT LEE EVANS, | ) | CASE NO. 4:16-cv-00005 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| DEPUTY LISA FRANTZ, et al., | ) | |
| | ) | |
| Defendants. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

On January 4, 2016, Plaintiff Robert Lee Evans ("Plaintiff" or "Evans") filed a Complaint in this case. Doc. 1. On March 24, 2016, Plaintiff filed an Amended Complaint (Doc. 3) and, with leave of Court, on December 27, 2016, Plaintiff filed a Second Amended Complaint (Doc. 57). In his Second Amended Complaint, Plaintiff asserts that the Defendants violated his civil rights. Doc. 57. Plaintiff alleges claims against all Defendants, including Nurse Nicole Lewis and LPN Lester,[1] for violations of his Eighth Amendment rights (cruel and unusual punishment) and Fourteenth Amendment rights (due process protections) and violations of 18 U.S.C. § 242. Doc. 57, ¶¶ 40-42.

On January 26, 2017, Defendants Nicole Lewis, RN ("Nurse Lewis") and Jasmine Lester, LPN ("Nurse Lester") (referred to collectively as "Nursing Defendants") filed a Motion to Dismiss, seeking dismissal of the claims alleged against them in Plaintiff's Second Amended Complaint (Doc. 57). Doc. 65. They argue that Plaintiff fails to state claims against them for

---

[1] The other named Defendants are Deputy Lisa Frantz, Deputy Louis Oxley, Deputy Joshua Rivers, Deputy George Cackovic, Deputy Sgt. Robert Kopey, Deputy Lt. Matthew M. Dugan, Deputy Damon Perry, Deputy Lee Hufnagel, and Deputy James Mullins. Doc. 57.

1

which relief can be granted and/or that the Court lacks subject matter jurisdiction. Doc. 65. Plaintiff has not opposed the Motion to Dismiss. The undersigned provides this report and recommendation as to the Nursing Defendants' Motion to Dismiss pursuant to the referral order in this case (Doc. 12).[2]

For the reasons explained below, the undersigned recommends that the Court **GRANT** the Nursing Defendants' Motion to Dismiss (Doc. 65) and dismiss with prejudice Plaintiff's Eighth and Fourteenth Amendment claims against the Nursing Defendants under Fed. R. Civ. P. 12(b)(6) and dismiss with prejudice Plaintiff's 18 U.S.C. § 242 claim against the Nursing Defendants under Fed. R. Civ. P. 12(b)(1).

## I. Background[3]

On or about January 2, 2015, while Plaintiff was incarcerated at Mahoning County Jail as a federal detainee and housed in the S-Pod, Deputy Oxley, without providing a reason, ordered Plaintiff to lock up in his cell. Doc. 57, ¶¶ 13, 19. Plaintiff requested to speak with a supervisor. Doc. 57, ¶ 19. Deputy Oxley responded by activating the emergency response button, which triggered other officers to respond to the S-Pod area. Doc. 57, ¶20. Deputy Oxley then started to order Plaintiff to be handcuffed and threatened Plaintiff that, if he did not comply, Plaintiff would not like the way Deputy Oxley did it. Doc. 57, ¶ 21. Deputy Rivers then appeared and started to speak with Plaintiff, indicating that a Shift Supervisor was on the way. Doc. 57, ¶ 22. Deputy Rivers stood beside Deputy Oxley outside Plaintiff's cell door in a calm manner not entering the cell without a supervisor's permission or presence. Doc. 57, ¶ 22. Deputy Frantz

---

[2] The referral includes all motions, including dispositive motions, through the close of discovery, with a report and recommendation to be prepared on dispositive motions. Doc. 12. The Nursing Defendants' Motion to Dismiss was filed prior to the close of discovery.

[3] These background facts are taken from the Second Amended Complaint. When ruling on a motion to dismiss, the court "must accept as true all the factual allegations contained in the complaint." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007)).

then appeared, entered Plaintiff's cell and became physically aggressive towards Plaintiff. Doc. 57, ¶ 23. Deputies Oxley and Rivers then joined Deputy Frantz and, while Plaintiff was against the wall, they began to knee, push and hit Plaintiff with closed fists. Doc. 57, ¶ 23. Plaintiff stood up from the wall and Deputy Frantz attempted to mace spray Plaintiff but sprayed Deputy Rivers instead. Doc. 57, ¶ 24. Deputy Frantz subsequently mace sprayed Plaintiff from outside the cell while Plaintiff was subdued by Deputy Oxley. Doc. 57, ¶ 24. Lt. Dugan and Sgt. Kopey arrived at Plaintiff's cell and escorted Plaintiff out of the S-Pod cell, down the stairs and towards the outer hallway. Doc. 57, ¶ 24. Deputy Frantz caught up with Plaintiff and mace sprayed Plaintiff and made offensive slurs. Doc. 57, ¶ 24.

The S-Pod hallway elevator door opened and Nurse Lewis came out of the elevator. Doc. 57, ¶ 25. Nurse Lewis saw "Plaintiff and rushed to help the Plaintiff but was then told by Deputy Frantz and other defendants to 'Not worry about the Plaintiff but go aid Deputy Rivers.'" Doc. 57, ¶ 24. Sgt. Kopey took Plaintiff to the first floor area and Plaintiff showered in a single shower for 20-45 minutes. Doc. 57, ¶ 25. Sgt. Kopey then escorted Plaintiff to the first floor medical unit and Nurse Lewis questioned Plaintiff about his injuries. Doc. 57, ¶ 25. Nurse Lewis attempted to view the injured areas on Plaintiff but Lt. Dugan stopped Nurse Lewis from approaching and examining Plaintiff. Doc. 57, ¶ 26. Nurse Lewis indicated to Sgt. Kopey and Lt. Dugan that she needed Plaintiff un-cuffed and Plaintiff needed to be examined. Doc. 57, ¶ 26. Sgt. Kopey responded "No!" "He (the Plaintiff) can verbally tell you what you need to know." Doc. 57, ¶ 26. While Plaintiff started to explain to Nurse Lewis what had occurred, Deputy Frantz was standing nearby "making angry verbal mutterings under her (Deputy Frantz's) breath" and Plaintiff was not allowed to be examined. Doc. 57, ¶ 27.

Sgt. Kopey and several other deputy Defendants escorted Plaintiff back to the elevator. Doc. 57, ¶ 27. As Plaintiff was entering the elevator, Deputy Frantz ran and yelled to Sgt. Kopey to hold the elevator, which was done. Doc. 57, ¶ 27. Once the elevator doors closed, while Plaintiff's hands were cuffed, Deputy Frantz pushed Plaintiff in the back of his head and, once the elevator doors, opened Deputy Frantz and other deputy Defendants continued to assault Plaintiff by running Plaintiff forcibly and at a fast pace into portions of cement walls and door frames while he was being taken to the O-Pod – segregation unit. Doc. 57, ¶ 27. O-Pod cells have doors that slide open electronically and have a tray and/or handcuff slot. Doc. 57, ¶ 29. While Plaintiff was handcuffed from behind, Plaintiff was assaulted by Deputy Frantz and other Defendants once in an O-Pod cell. Doc. 57, ¶¶ 30, 32. Sgt. Kopey stood by and then told Deputy Frantz and the other Defendants "Okay, that's enough, stop. Let's go." Doc. 57, ¶ 30. After others left the cell, Sgt. Kopey told Plaintiff to come to the door and put his hands in the slot to be un-cuffed. Doc. 57, ¶ 31. Plaintiff proceeded to do as instructed and, while his hands remained cuffed behind his back, Deputy Frantz violently grabbed and twisted his hands and called him vulgar names. Doc. 57, ¶ 32-33.

Ultimately, Plaintiff's handcuffs were removed and several minutes later Deputy Perry and Nurse Lester entered the O-Pod. Doc. 57, ¶¶ 34-35. "Plaintiff asked Deputy Damon Perry and Defendant LPN Lester for help due to the fact that the Plaintiff needed medical attention from being assaulted." Doc. 57, ¶ 36. While the Plaintiff was speaking to them, an unknown voice came over the intercom stating that Deputy Perry and Nurse Lester should not listen to Plaintiff because he had already been examined before being brought to the O-Pod. Doc. 57, ¶ 36. Through the cell door slot that Deputy Perry opened, Plaintiff received previously prescribed medication and Nurse Lester examined Plaintiff's "hands and wrists and openly sighed and

acknowledged that there existed a medical issue, and that the Plaintiff complained about his right shoulder, groin, and overall body pain." Doc. 57, ¶ 37. Deputy Perry then instructed Plaintiff to move away from the cell door slot, which Plaintiff did. Doc. 57, ¶ 38. Deputy Perry closed the cell door slot and Deputy Perry and Nurse Lester walked away from Plaintiff's cell. Doc. 57, ¶ 38.

## II. Plaintiff's Claims[4]

Plaintiff asserts that, while acting under color of law, the Nursing Defendants deprived him of his rights under the Eighth and Fourteenth Amendments by refusing medical treatment to Plaintiff. Doc. 57, ¶¶ 40-41, 48, 52. Plaintiff also asserts that the Nursing Defendants violated federal law pursuant to 18 U.S.C. § 242. Doc. 57, ¶ 42.

## III. Legal Standard

### A. Rule 12(b)(1) – Lack of Subject Matter Jurisdiction

In cases where a defendant raises the issue of lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive a motion to dismiss. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). "A court lacking jurisdiction cannot render judgment but must dismiss the case at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Bennett v. U.S. Postal Service*, 2012 WL 5463822, *2 (N.D. Ohio Nov. 8, 2012) (quoting *Basso v. Utah Power & Light, Co.*, 495 F.2d 906, 909 (10th Cir.1974) and quoting *Kusens v. Pascal Co.*, 448 F.3d 349, 359 (6th Cir. 2006) for the proposition that "federal courts are under an independent obligation to examine their own jurisdiction."). "Motions to dismiss for lack of subject matter

---

[4] Evans is proceeding *pro se* in this suit. *Pro se* pleadings are liberally construed. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972).

5

jurisdiction fall into two general categories: facial attacks and factual attacks."[5] *Id.* (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). "Regardless of the type of attack, Plaintiff, as the party invoking federal subject matter jurisdiction, bears the burden of persuading the Court that subject matter jurisdiction exists." *Kobaivanova v. Hansen*, 2011 WL 4401687, * 2 (N.D. Ohio Sept. 16, 2011) (citing *Dismas Charities, Inc. v. U.S. Dep't of Justice*, 401 F.3d 666, 671 (6th Cir. 2005)).

**B. Rule 12(b)(6) – Failure to State a Claim**

When reviewing a Rule 12(b)(6) motion to dismiss, a court must accept all well-pleaded factual allegations as true but need not "accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Turner v. Ohio Dept. of Rehabilitation and Corrections*, 157 F.3d 453, 456 (6th Cir. 1998) ("The court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove any set of facts in support of her claim that would entitle her to relief.") (citing *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996); *see also Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 446 (6th Cir. 2000) (In considering a motion to dismiss, the court is to "construe the complaint in the light most favorable to the plaintiff and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle him to relief [and while a court is to] accept all

---

[5] "A *facial* attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading. In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990) (emphasis in original). "A *factual* attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. On such a motion, no presumptive truthfulness applies to the factual allegations . . . and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *U.S. v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (citing *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325).

of plaintiff's factual allegations as true . . . [the court] need not accept as true legal conclusions or unwarranted factual inferences.") (internal citations omitted).

Further, to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[P]laintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (internal quotation marks omitted).

## IV. Analysis

**A. Eighth and Fourteenth Amendment Claims**

Plaintiff claims that the Nursing Defendants refused medical treatment to Plaintiff and, therefore, violated his rights under the Eighth and Fourteenth Amendments. Doc. 57, ¶¶40-41. Plaintiff asserts claims under both the Eighth and Fourteenth Amendments on the basis that he was a federal detainee and being held on a supervised release violation at the time of the alleged incident. Doc. 57, ¶ 40, n. 1.

"Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citations omitted). Similarly, the Due Process Clause of the Fourteenth Amendment provides pre-trial detainees "a right to adequate medical treatment

that is analogous to prisoners' rights under the Eighth Amendment." *Gray v. City of Detroit*, 399 F.3d 612, 615-616 (6th Cir. 2005). Thus, whether classified as a prisoner or pre-trial detainee, to establish a claim for deliberate indifference against the Nursing Defendants actionable under § 1983, Plaintiff must demonstrate that the Nursing Defendants were deliberately indifferent to his serious medical needs. *Estelle*, 429 U.S. at 104; *Gray,* 399 F.3d at 616.

To demonstrate that "the failure to address a serious medical need rises to the level of a constitutional violation[,]" a plaintiff must satisfy both objective and subjective requirements. *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (relying on *Farmer*, 511 U.S. at 833).

To satisfy the objective requirement, a plaintiff "must show 'the existence of a 'sufficiently serious' medical need.'" *Id.* (quoting *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004)).

To satisfy the subjective requirement, a plaintiff "must show 'a sufficiently culpable state of mind in delaying medical care.'" *Id.* The subjective requirement is met where it is shown that "prison officials acted with 'deliberate indifference' to a serious medical need." *Id.*

"[T]he term deliberate indifference 'describes a state of mind more blameworthy than negligence.'" *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, "every claim by a prisoner that he has not received adequate medical treatment [does not] state[] a violation of the Eighth Amendment." *Estelle*, 429 U.S. at 105. Nor does medical malpractice rise to the level of a constitutional violation because the victim is a prisoner. *Id.* at 106. Deliberate indifference requires "something akin to criminal recklessness: The defendant must 'know that inmates face a substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it.'" *Mitchell v. Hiniger*, 553 Fed. Appx. 602, 604 (6th Cir. 2014) (unpublished) (quoting *Farmer*, 511 U.S. at 847). "In

addition, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnosis or treatment are not enough to state a deliberate indifference claim." *Ward v. Smith*, 100 F.3d 958, 1996 WL 627724, at *1 (6th Cir. 1996) (unpublished) (citing *Westlake v. Lucas*, 537 F2d. 857, 860 n. 5 (6th Cir. 1976)); *see also Wright v. Gardener*, 57 Fed. Appx. 666, 669 (6th Cir. 2003) (unpublished) (Prisoner's claim was "based on his dissatisfaction with the medical care he received. Such claims fail to state an Eighth Amendment claim of deliberate indifference to a serious medical need.") (also citing *Westlake*, 537 F.2d at 860, n. 5). "Thus, to prove the required level of culpability, a plaintiff must show that the official: (1) subjectively knew of a risk to the inmate's health, (2) drew the inference that a substantial risk of harm to the inmate existed, and (3) consciously disregarded that risk." *Jones v. Muskegon County*, 625 F.3d 935, 941 (6th Cir. 2010) (relying on *Farmer*, 511 U.S. at 837)).

Construing the factual allegations in the Second Amended Complaint in the light most favorable to Plaintiff, as discussed more fully below, Plaintiff fails to state a deliberate indifference claim as to the Nursing Defendants that is plausible on its face. *See Twombly*, 550 U.S. at 570.

1. **Nurse Lewis**

Plaintiff alleges that, as the "S-Pod hallway elevator . . . opened . . . defendant Nurse Nicole Lewis emerged . . . and [saw] the Plaintiff and rushed to help the Plaintiff" but was stopped by deputy Defendants and told to "Not worry about the Plaintiff but to go aid Deputy Rivers." Doc. 57, ¶ 25. Subsequently, Plaintiff was taken to the medical unit and Nurse Lewis questioned Plaintiff about his injuries. *Id.* Nurse Lewis attempted to examine Plaintiff but Lt. Dugan and Sgt. Kopey would not allow Nurse Lewis to approach Plaintiff and she was told that the Plaintiff could "verbally tell [Nurse Lewis] what [she] need[ed] to know." Doc. 57, ¶ 26.

While Plaintiff alleges that Deputy Frantz was muttering angry statements under her breath, Plaintiff began to "to express to Nurse Lewis what took place." Doc. 57, ¶ 27.

The factual allegations made with respect to Nurse Lewis fail to state a plausible claim that Nurse Lewis consciously disregarded a substantial risk of harm to Plaintiff's health. In addition to seeing and questioning Plaintiff regarding his injuries, Nurse Lewis, by Plaintiff's own account, took steps to attempt to examine him physically but she was prevented from doing so by other individuals. Doc. 57, ¶¶ 25-27. Further, although Plaintiff claims that Nurse Lewis's medical intervention did not amount to adequate medical treatment, "differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnosis or treatment are not enough to state a deliberate indifference claim." *Ward*, 100 F.3d 958, 1996 WL 627724, at *1. Also, when a plaintiff, who is asserting a deliberate indifference claim, has received treatment for his condition, as here, he must show that his treatment was "so woefully inadequate as to amount to no treatment at all." *Mitchell*, 553 Fed. Appx. at 604 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). Although Nurse Lewis's medical intervention was of a limited nature, Plaintiff's allegations do not demonstrate that Nurse Lewis's medical treatment of Plaintiff amounted to no treatment at all.

Based on the foregoing, the undersigned concludes that Plaintiff's factual allegations with respect to his claims against Nurse Lewis are insufficient to satisfy the subjective requirement of a claim for deliberate indifference. Thus, Plaintiff's claim for deliberate indifference as to Nurse Lewis fails and should be dismissed.

2. **Nurse Lester**

Plaintiff alleges that several minutes after he was being transported to a cell in the O-Pod, Nurse Lester arrived along with Deputy Perry. Doc. 57, ¶¶ 28, 35. Plaintiff indicated to Nurse

Lester and Deputy Perry that he "needed medical attention from being assaulted." Doc. 57, ¶ 36. A voice from an unknown individual was heard over the intercom speaker system stating, "Don't listen to him! He's already been examined" and that Plaintiff had been to "medical before being brought over here (O-Pod)!" Doc. 57, ¶ 36; *see also* Doc. 57, ¶ 48(b). Plaintiff alleges that Nurse Lester "briefly examined (through the cell door slot which Deputy Damon Perry opened so that Plaintiff could receive his previously prescribed medication) the Plaintiff's hands and wrists and openly sighed and acknowledged that there existed a medical issue, and that the Plaintiff complained about his right shoulder, groin, and overall body pain" (Doc. 57, ¶ 37) and Nurse Lester "viewed the injuries to the Plaintiff's wrists, arms, hands and face" (Doc. 57, ¶ 48(a)). Deputy Perry then instructed Plaintiff to move away from the cell door slot. Doc. 57, ¶ 38. Plaintiff complied with Deputy Perry's instructions, Deputy Perry closed the cell door slot, and Deputy Perry and Nurse Lester walked away from Plaintiff's cell. Doc. 57, ¶ 38.

The factual allegations made with respect to Nurse Lester fail to state a plausible claim that Nurse Lester consciously disregarded a substantial risk of harm to Plaintiff's health. By Plaintiff's own account, Nurse Lester provided medical attention to Plaintiff following his alleged assault. *Ward*, 100 F.3d 958, 1996 WL 627724, at *1. She viewed injuries to Plaintiff's wrists, arms, hands and face; she examined his hands and wrists; and she administered previously prescribed medication. Doc. 57, ¶¶ 37, 48(a). Further, Plaintiff has not shown that Nurse Lester's examination of him was "so woefully inadequate as to amount to no treatment at all." *Mitchell*, 553 Fed. Appx. at 604 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). Also, although Plaintiff suggests that Nurse Lester's medical assessment at the time she saw him in the O-Pod cell was inadequate, as indicated above, "differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnosis or

11

treatment are not enough to state a deliberate indifference claim." *See Ward*, 100 F.3d 958, 1996 WL 627724, at *1.

Based on the foregoing, the undersigned concludes that Plaintiff's factual allegations with respect to his claims against Nurse Lester are insufficient to satisfy the subjective requirement of a claim for deliberate indifference. Thus, Plaintiff's claim for deliberate indifference as to Nurse Lester fails and should be dismissed.

**B. 18 U.S.C. § 242 Claims**

Plaintiff's Second Amended Complaint also alleges claims against the Nursing Defendants under 18 U.S.C. § 242. Doc. 57, ¶ 42. 18 U.S.C. § 242 is a federal statute that "address[es] criminal offenses which can be prosecuted only by the proper United States authorities" and "do[es] not permit private causes of action." *Gonzalez v. Lappin*, 2008 WL 4114491, * 2 (N.D. Ohio Aug. 28, 2008) (citing *Purk v. United States*, 747 F.Supp. 1243, 1248 (S.D. Ohio 1989)). Accordingly, Plaintiff's claims under 18 U.S.C. § 242 against the Nursing Defendants should be dismissed for lack of subject matter jurisdiction.

**V. Conclusion and Recommendation**

For the reasons set forth herein, the undersigned recommends that the Court **GRANT** the Nursing Defendants' Motion to Dismiss (Doc. 65) and dismiss with prejudice Plaintiff's Eighth and Fourteenth Amendment claims against the Nursing Defendants under Fed. R. Civ. P. 12(b)(6). The undersigned also recommends that the Court dismiss with prejudice Plaintiff's 18 U.S.C. § 242 claim against the Nursing Defendants under Fed. R. Civ. P. 12(b)(1).

Also, although the other Defendants in this case have not filed a motion to dismiss, the undersigned recommends that the Court dismiss with prejudice Plaintiff's 18 U.S.C. § 242 claims against all other Defendants in this case since the Court lacks subject matter jurisdiction

to hear those claims. *See Gonzalez*, *supra*; *Bennett v. U.S. Postal Service*, 2012 WL 5463822, *2 ("A court lacking jurisdiction cannot render judgment but must dismiss the case at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking.") (internal citations omitted).

Dated: April 25, 2017

Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).