# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT LEE EVANS, | ) | CASE NO. 4:16-cv-5 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| DEPUTY LISA FRANTZ, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Proceeding *pro se*, plaintiff Robert Lee Evans ("Evans") has brought this civil rights action seeking damages associated with his confinement in the Mahoning County Jail on January 2, 2015. Specifically, he challenges the actions taken by certain corrections officers and staff, insisting that he was subjected to excessive force and a deliberate indifference to his serious medical needs, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

Presently pending before the Court is the motion for summary judgment filed by defendants Deputy Lisa Frantz ("Frantz"), Deputy Louis Oxley ("Oxley"), Deputy Joshua Rivers ("Rivers"), Deputy George Cackovic ("Cackovic"), Deputy Sgt. Robert Kopey ("Kopey"), Deputy Lt. Matthew M. Dugan ("Dugan"), Deputy Damon Perry ("Perry"), Deputy Lee Hufnagel ("Hufnagel"), and Deputy James Mullins ("Mullins") (collectively "Mahoning County Jail defendants"). (Doc. No. 70 ["MSJ"].)[1] Notwithstanding the fact that Evans was afforded

---

[1] For good cause shown, Mahoning County Jail defendants' motion (Doc. No. 69) for leave to file a summary judgment motion in excess of the page limitation for standard track motions is granted.

several extensions of time in which to file a response (*see* Doc. No. 76; Non-doc. Order, dated July 3, 2017; Non-doc. Order, dated July 27, 2017), Evans did not file an opposition, and the time for filing such a responsive brief has passed. For the reasons set forth below, summary judgment is granted in favor of Mahoning County Jail defendants.

## I. BACKGROUND

On January 2, 2015, Evans was being held in the Mahoning County Jail under a supervised release violation of a federal conviction. (Doc. No. 57 (Second Amended Complaint ["SAC"]) ¶¶ 1, 13, 15.) Though the impetus for the transfer is disputed, it is clear that Oxley, who was assigned to work that day in a general population unit known as s-pod, requested assistance from various jail staff to transfer Evans from his cell in s-pod to a cell on the disciplinary unit known as "o-pod." (*Id.* ¶¶ 15-20; Doc. No. 70-1 (Affidavit of Louis Oxley ["Oxley Aff."]) ¶¶ 4-9; Doc. No. 70-4 (Affidavit of Joshua Rivers ["Rivers Aff."]) ¶¶ 6-7; Doc. No. 70-6 (Affidavit of Robert Kopey ["Kopey Aff."]) ¶¶ 4-6; Doc. No. 70-13 (Affidavit of Lisa Frantz ["Frantz Aff."]) ¶¶ 4-6.) The Mahoning County Jail defendants all participated, in one way or another, in the transfer.[2] Evans raises claims of excessive force relating to four incidents during the transfer: (1) within his cell while housed within "s-pod" (*id.* ¶¶ 14-24, 43, 45-47); (2) within an elevator while being transported to o-pod (*id.* ¶¶ 25-27, 43, 47); (3) within the hallway vestibule after exiting the elevator (*id.* ¶¶ 27, 43); and (4) while being escorted to and within his

---

[2] Evans also brought suit against two other Mahoning County Jail employees, both nurses, but they were dismissed from this action by memorandum opinion, dated May 30, 2017. (Doc. No. 75.)

2

cell on o-pod. (*Id.* ¶¶ 28-38, 43.)

With respect to these claims, there is no dispute that, during the extraction from his cell on s-pod, Evans was subjected to a three-second burst of a chemical agent and eventually handcuffed. It is also beyond dispute that Evans was transported on foot through the facility to the booking room where he received a shower before being taken to the nurse's station. After he was examined by Mahoning County Jail medical staff, Evans was cleared to be transferred to o-pod and was placed in a cell on o-pod. Beyond these undisputed facts, the parties disagree as to the details of the events of January 2, 2015, including the extent and type of force used against Evans and the nature and extent of any injuries he sustained as a result. However, these factual disputes, to the extent they are not resolved by video footage from the jail, are academic as Evans failed to properly exhaust his administrative remedies.

## II. DISCUSSION

### A. **Summary Judgment Standard**

Under Fed. R. Civ. P. 56(a), when a motion for summary judgment is properly made and supported, it shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

An opposing party may not rely on allegations or denials in its own pleading; rather, by affidavits or by materials in the record, the opposing party must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1). Affidavits or declarations filed in support of or in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). A movant is not required to file affidavits

3

or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

In reviewing summary judgment motions, the Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *White v. Turfway Park Racing Ass'n*, 909 F.2d 941, 943-44 (6th Cir. 1990), *impliedly overruled on other grounds by Salve Regina Coll. v. Russell*, 499 U.S. 225, 111 S. Ct. 1217, 113 L. Ed. 2d 190 (1991). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict[.]" *Id*. at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been

established that create a genuine issue of material Fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992) (citation omitted). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*. (citation omitted).

B.  **The Verified Complaint and Video Evidence**

While Evans did not file an opposition to summary judgment, the SAC is verified and signed by him under penalty of perjury. (SAC at 431[3].) It is well settled that a properly verified complaint "carries the same weight as would an affidavit for the purposes of summary judgment." *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (citing *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993)); *see Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992) ("the *handwritten* complaint of a pro se prisoner may defeat a defendant's motion for summary judgment because it contained language that verified the complaint within the meaning of [28 U.S.C. § 1746]") (citation omitted, emphasis in original). Proper verification generally requires two components: an assertion that the statements are true and correct, and an averment that the facts are made under penalty of perjury. *United States v. 8 Gilcrease Lane, Quincy Fla. 32351*, 587 F. Supp. 2d 133, 139 (D.D.C. 2008) (citation omitted).

---

[3] All page number references are to the page identification number generated by the Court's electronic docketing system.

In his signed SAC, Evans avers that he "declare[s] under the penalties of perjury that the statements and facts in this complaint are true and correct to the best of [his] knowledge and beliefs." (SAC at 431, capitalization omitted.) While this averment meets the statutory requirements of 28 U.S.C. § 1746, it suggests that allegations contained therein may go beyond Evans' knowledge by including his beliefs, as well. "To constitute evidence sufficient to support or oppose a motion for summary judgment, an affidavit 'must be made on personal knowledge, set out facts that would be admissible, and show that the affiant is competent to testify on the matters stated.'" *Totman v. Louisville Jefferson Cnty. Metro. Gov't*, 391 F. App'x 454, 464 (6th Cir. 2010) (rejecting allegations in a verified complaint that were not based on personal knowledge but, instead, represented mere speculation based on "beliefs") (quoting former Fed. R. Civ. P. 56(e)(1)). For purposes of summary judgment, the Court presumes that Evans has personal knowledge of the events associated with his own interactions with Mahoning County Jail defendants and other jail staff and personnel, but it will not treat as evidentiary those allegations that clearly extend beyond Evans' personal knowledge.

Moreover, while the Court must view the evidence in a light most favorable to Evans as the non-moving party, "[t]here is . . . an added wrinkle in this case: existence in the record of a videotape capturing [many of] the events in question." *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). In such circumstances, the Court must also "view[] the facts in the light depicted by the videotape." *Id*. at 381; *see Kinlin v. Kline*, 749 F.3d 573, 576 (6th Cir. 2014) ("[W]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.") (quotation marks and

citation omitted); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) ("[W]here, as here, the record contains an unchallenged videotape capturing the events in question, [the court] must only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape.") (citation omitted).

    C.    **Exhaustion**

According to the Mahoning County Jail defendants, all of Evans' claims are subject to dismissal because he failed to exhaust his administrative remedies before bringing suit in federal court. The Prison Litigation Reform Act ("PLRA") prohibits prisoners "confined in any jail, prison, or other correctional facility" from bringing any action arising out of prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo*, 548 U.S. 81, 85, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006) ("exhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under [42 U.S.C.] § 1983") (citation omitted). "This requirement is mandatory but not jurisdictional, and applies to all federal claims seeking redress for prison circumstances or occurrences regardless of the type of relief being sought." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015) (citations omitted).

Furthermore, a prisoner must properly exhaust his administrative remedies. *Woodford*, 548 U.S. at 84. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91; *see Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) ("an inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is

futile for him to do so because his grievance is now time-barred under the regulations") (citation omitted).

"An inmate's grievance must give 'sufficient notice of the matter being grieved . . . ,' so that '[p]rison officials . . . ha[ve] a chance to provide a remedy for the inmate and to decide whether the objectives of the review process have been served.'" *Rivers v. Turner*, No. 3:14 CV 2547, 2016 WL 4065884, at *3 (N.D. Ohio July 29, 2016) (quoting *Maxwell v. Corr. Med. Servs., Inc.*, 538 F. App'x 682, 688 (6th Cir. 2013)); *see Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003) (a prisoner's grievance need not "allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory. Rather, it is sufficient . . . that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim"), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007); *see also Mattox v. Edelman*, 851 F.3d 583, 591 (6th Cir. 2017) ("We have also explained that the purpose of the PLRA's exhaustion requirement 'is to allow prison officials a fair opportunity to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court.'") (quoting *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (further quotation marks omitted)).

In *Bock*, the Supreme Court touched upon an inmate's exhaustion obligations, including the level of detail necessary for prisoner grievances. In finding that courts ought not impose severe technical requirements on prisoners attempting to satisfy the exhaustion requirement, the Court reiterated that the primary purpose of the exhaustion requirement is to allow a prison to address complaints and reduce litigation. *Bock*, 549 U.S. at 219 (citing, with favor, *Johnson v.*

*Johnson*, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued[.]")); *see also Newson v. Steele*, No. 09-10346, 2010 WL 3123295, at *3 (E.D. Mich. July 1, 2010) ("Exhaustion serves a dual purpose: it gives prisoners 'an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors.' Additionally, the exhaustion requirement 'has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.'") (quoting *Bock*, 549 U.S. at 205) (internal citation omitted).

The grievance procedure is contained in the Mahoning County Jail's "Prisoner Rule of Conduct and Handbook," and a copy of the handbook is furnished to each inmate upon his admission to the jail. (Doc. No. 70-17 (Affidavit of Kenneth Kountz[4] ["Kountz Aff."]) ¶¶ 4-6, Ex. K-1.) *See Nickens v. Dep't of Corr.*, 277 F. App'x 148, 150 (6th Cir. 2008) ("[P]rison grievance procedures supply the yardstick for determining what steps are required for exhaustion.") (quotation marks and citations omitted). As set forth in the handbook, "the grievance procedure consists of two separate steps: a grievance and an appeal." (Kountz Aff. ¶ 6.) The inmate initiates the grievance process by filling out an inmate complaint form. This form is in triplicate—consisting of pink, yellow, and white pages—and serves as the grievance. The inmate retains the pink copy and submits the other two copies. If the deputy on duty is able to address the issue, the resolution is noted on the form and the inmate is given the yellow copy. If

---

[4] Kenneth Kountz serves as a captain in the Mahoning County Sherriff's Office and is "second in command of the corrections division[,]" "responsible for overseeing operations within the Mahoning County Jail." (*Id.* ¶¶ 2-3; *see id.* ¶ 4.)

the deputy is unable to resolve the issue, the yellow and white copies are forwarded to the shift supervisor. If the supervisor is unable to answer, the copies are further forwarded to the jail's administrative office. Ultimately, a decision is rendered on the yellow form and returned to the inmate. (*Id*. ¶ 7, Ex. K-1.) If an inmate is dissatisfied with the resolution at this stage, the inmate must file an appeal with either the officer-in-charge or the jail warden, using a form identical to the grievance form. (*Id*. ¶ 8, Ex. K-1.)

The record reflects that Evans submitted seven inmate complaint forms from December 17, 2014 to April 6, 2015. (*Id*. ¶ 9, Ex. K-2.) The incidents giving rise to the present litigation occurred on January 2, 2015. On January 5, 2015, Evans filed an inmate complaint requesting to speak with a supervisor because he was missing a paperback book and because "his . . . chips and soups were deliberately opened and smashed . . . ." (*Id*. ¶ 11, Ex. K-2 at 687.) No mention was made of the alleged assault in this complaint.

On January 9, 2015, Evans filed another inmate complaint where he registered his disagreement with the resolution of the issues relating to his missing book and damaged food, and where he made vague references to an assault. In fact, his comments on the subject were limited to his criticism of the jail's response "concerning [him] being assaulted" and "the fact that [he was] being denied medical (outside a/or here) treatment."(*Id*. ¶ 12, Ex. K-2 at 688.) A decision was rendered on Evans' January 9, 2015 inmate complaint on January 18, 2015. (*Id*. ¶ 14.) Evans did not appeal the decision. (*Id*. ¶ 15, Ex. K-2 at 683-89.)

Based upon these undisputed facts, the Court finds that Evans failed to properly exhaust

his administrative remedies.[5] To extent that the January 9, 2015 inmate complaint was an attempt to grieve the January 2, 2015 alleged assault, it fell woefully short of providing sufficient notice. This inmate complaint did not contain any acts of mistreatment or misconduct by any officer. (*Id*. ¶ 13, K-2 at 688.) In fact, it failed to provide any identifying details that would have alerted prison officials to the incident and the need to address problems associated with Evans' confinement. While Evans was not required to allege a specific legal theory, or demonstrate how he could satisfy its elements, he was obligated to apprise jail officials of the events giving rise to his claims. Because Evans never afforded the institution the opportunity to address these issues, Evans has failed to exhaust his administrative remedies with respect to his constitutional claims and summary judgment in favor of Mahoning County Jail defendants is appropriate for this reason alone.

Even if the January 9, 2015 inmate complaint had provided sufficient notice to jail officials (which it did not), Evans' claims would still be subject to dismissal because he failed to avail himself of the appeal process provided for in the inmate handbook. *See Hartsfield*, 199 F.3d at 309 ("Even if [the inmate] did file an initial grievance against [the officers] he was required to continue to the next step in the grievance process[.]"); *see, e.g., Nickens*, 277 F. App'x at 152 (finding that a prisoner failed to exhaust his administrative remedies by neglecting to file a timely appeal of his grievance, noting that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules in order to satisfy the exhaustion requirement of the PLRA") (citations omitted). By abandoning the administrative process before

---

[5] Evans did not respond to Mahoning County Jail defendants' exhaustion argument. While Evans was not required to plead factual allegations supporting exhaustion, as exhaustion is an affirmative defense, *see generally Lee*, 789 F.3d at 677, the lack of such allegations means that the SAC cannot be relied upon to create a genuine issue of material fact on this issue.

completion, Evans did not properly exhaust his administrative remedies, and summary judgment is appropriate for this additional reason.[6] *See Hartsfield*, 199 F.3d at 309.

---

[6]While the Court need not reach the merits of Evans' claims, it is worth noting that the existence of the videotape recording of the first three cited incidents—Evans' extraction from s-pod, within the elevator, and within the hallway outside the elevator—belie many of Evans' allegations that he was subjected to excessive force during those encounters. Even though some force was used to subdue Evans in his cell on s-pod, the video blatantly contradicts Evans' allegations that he was "maced" in the corridor for "no apparent reason", and the fact that he emerges from his cell seconds later without any signs of injury or medical distress contradicts his claims that he was viciously beaten during the brief encounter in the cell. (*See* SAC ¶¶ 23-24.) *See Thompson v. Joseph*, No. 1:12-cv-992, 2014 WL 1685918, at *9 (S.D. Ohio Apr. 29, 2014) ("'An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim.'") (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37-38, 130 S. Ct. 1175, 175 L. Ed. 2d 995 (2010) (further quotation marks and citation omitted)); *Harrison v. Gregg*, No. 1:12-cv-005, 2013 WL 5353188, at *8 (S.D. Ohio Sept. 24, 2013) ("evidence shows defendant Gregg's actions constituted a *de minimis* use of force which caused plaintiff to suffer no discernible injury") (quotation marks and citation omitted). In fact, Mahoning County Jail defendants have offered evidence that, even after the fourth incident in o-pod that was not captured on videotape, Evans had "no discernable injuries." (Doc. No. 70-12 (Affidavit of Damon Perry ["Perry Aff."]) ¶ 6.) Moreover, video coverage in the elevator and hallway, where there were no signs of force, stands at odds with his allegations that deputies "pushed" him causing his "head and neck to snap forward[,]" and "roughly grabbed" him. (*See id*. ¶¶ 25-27.) This indisputable video coverage blatantly contradicts Evans' allegations such that no reasonable juror could find that Mahoning County Jail defendants employed force in those instances that shocked the conscience. *See, e.g., Khother v. DeEulis*, 527 F. App'x 461, 462 (6th Cir. 2013) (video blatantly contradicted arrestee's claims of excessive force). Evans' deliberate indifference claims would also fail on the merits. It is undisputed that Evans received a decontaminating shower immediately after exposure to the chemical spray, and shortly thereafter was seen by nurses. Moreover, evidence offered in support of summary judgment demonstrates that Evans had no "identifiable, overt physical trauma or other type of apparent injury." (Doc. No. 70-20 (Affidavit of Nicole Lewis ["Lewis Aff."]) ¶¶ 4-6; Doc. No. 70-21 (Affidavit of Jasmine Redmond ["Redmond Aff."]) ¶¶ 4-5; *see* Doc. No. 70-9 (Affidavit of Lee Hufnagel ["Hufnagel Aff."]) ¶ 7.) This undisputed evidence demonstrates that Evans did not have a "serious" medical condition, and, therefore, Evans would be unable to meet the objective component of the deliberate indifference test. *See Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (the objective component of the deliberate indifference standard requires the existence of a "sufficiently serious" medical need) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)). Evans' conclusory allegations that he sustained serious physical and mental injuries, even if contained in a verified complaint, would not defeat this fully supported summary judgment motion. *See Totman*, 391 F. App'x at 464 (court need not accept conclusory allegations in verified complaint).

## III. CONCLUSION

For all of the foregoing reasons, the summary judgment motion of Mahoning County Jail defendants (Doc. No. 70) is granted on the ground that plaintiff, Robert Lee Evans, failed to exhaust his administrative remedies, and this case is closed.

**IT IS SO ORDERED**.

Dated: March 1, 2018

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**